IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAROL J. DEICHMANN, and ) | |
| TERRY L. DEICHMANN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 05-cv-0831-MJR |
| ) | |
| WAVEWARE USA, ) | |
| WAVEWARE, LTD., and ) | |
| QVC, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM and ORDER

REAGAN, District Judge:

    A.    Introduction

Now before the Court are fully briefed motions to dismiss and for summary judgment in this personal injury case arising out of Carol Deichmann's use of a product called "Cozy Toze." These microwave-heatable slippers were manufactured by Waveware Limited, distributed by Waveware USA, and sold by QVC, Inc. Defendant QVC moves (Doc. 52) to dismiss Counts XI, XII, XIII, XIV and XV of Plaintiffs' amended complaint, based on an Illinois statute (735 ILCS 5/2-621). Defendants Waveware Limited and QVC seek summary judgment "on all Counts" against them (Doc. 54, p. 2). Analysis begins with the legal standards governing these motions.

    B.    Applicable Legal Standards

Defendants' dismissal motion cites Federal Rule of Civil Procedure 12(b),

without citing a specific subsection of that Rule (Doc. 52, p. 1).[1]  The supporting materials, however, suggest that dismissal is sought for failure to state a claim, under Rule 12(b)(6).

In assessing a Rule 12(b)(6) motion, the Court must take as true all factual allegations and construe in plaintiff's favor all reasonable inferences. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 656 (7th Cir. 2006); *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).  A complaint should be dismissed only "if there is no set of facts, even hypothesized, that could entitle a plaintiff to relief." *Massey*, 464 F.3d at 656.  As the United States Court of Appeals for the Seventh Circuit explained recently:

> "We construe the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).... Dismissal is proper "only if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.*

*McCready v. EBay, Inc.*, 453 F.3d 882, 887 (7th Cir. 2006).

---

[1] This failure to identify the appropriate subsection is puzzling in light of the undersigned Judge's requirement that movants specify a subpart of Rule 12, plainly stated on this Judge's web page, part of the District Court's web site at www.ilsd.uscourts.gov: "In any dismissal motion filed before Judge Reagan, the movant must clearly state: (1) the specific section under which dismissal is sought, i.e., not just 'Rule 12(b)' but 'Rule 12(b)(1)' or 'Rule 12(b)(6),' etc.; (2) whether dismissal is sought of the entire case or just certain parties or claims; and (3) whether dismissal is sought with prejudice or without prejudice."

Indeed, the law of this Circuit recognizes that, generally, "a party need not plead much to survive a motion to dismiss" – not specific facts, not legal theories, and not anything in anticipation of a possible defense. *Massey* at 650, *citing Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901-02 (7th Cir. 2004). The gist of this Court's inquiry is "whether the complaint gives the defendant fair notice of what the suit is about and the grounds on which it rests." *Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)(complaints need only present a claim for relief).

A different standard governs motions for summary judgment filed under Federal Rule of Civil Procedure 56. Summary judgment should be granted when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006), *quoting* Fed. R. Civ. P. 56(c), and *citing Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In assessing whether summary judgment is warranted, the Court must construe all evidence, plus the inferences reasonably drawn from the evidence, in the light most favorable to the non-moving party. *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007), *citing Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005). These standards are borne in mind as the Court reviews the two pending motions.

C.    Analysis of Dismissal Motion (Doc. 52)

QVC urges dismissal of Counts XI, XII, XIII, XIV and XV of Plaintiff's amended complaint (Doc. 17) under 735 ILCS 5/2-621 (West 2000). That section of the Illinois Code of Civil Procedure "governs all product liability actions and provides the methods by which a nonmanufacturing defendant may be dismissed." *Carollo v. Al Warren Oil Co., Inc.*, 820 N.E.2d 994, 1006 (Ill. App. 2004).

> Specifically, § 2-621 provides:
>
> (a)  In any product liability action based on any theory or doctrine commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the product allegedly causing injury, death or damage....
>
> (b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have ... answered or otherwise pleaded, the court shall order the dismissal of a product liability action based on any theory or doctrine against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section....[2]

Clearly, § 621's mechanism for dismissal of non-manufacturing defendants only works for product liability claims. In the case at bar, QVC (the non-manufacturing

---

[2] Subsection (c) – inapplicable in the case at bar – exempts from dismissal any nonmanufacturer who exercised significant control over the design or manufacture of the product, had actual knowledge of the defect in question or created the defect in question.

Defendant) requests dismissal of Counts XI, XII, XIII, XIV and XV. Only Count XII is a true strict liability claim. Count XI is a negligence claim; Count XIII is an express breach of warranty claim; Count XIV is an implied breach of warranty claim; and Count XV is a loss of consortium claim brought by Carol Deichmann's husband, Terry.

The Court finds unpersuasive QVC's argument that those counts (XI, XIII, XIV, and XV) merely are "artfully labeled" strict liability claims which actually merit dismissal under § 621. The Court, however, does conclude that dismissal of **Count XII** (the strict liability claim against QVC) is needed. In so finding, the Court rejects Plaintiffs' argument that an "exception" to the seller's exception applies here and prevent dismissal of Count XII.

Plaintiffs rely on language in § 621(b) which addresses the inability of the manufacturing defendant to satisfy a judgment or reasonable settlement with a plaintiff. But that provision only kicks in *after* a seller defendant has been dismissed. Section 621(b) describes the process for dismissal of the nonmanufacturing defendant and then states:

> The plaintiff may at any time subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant or defendants, provided plaintiff can show one or more of the following:
> …
>
> (4) That the manufacturer is unable to satisfy any judgment as determined by the court; or
> (5) … that the manufacturer would be unable to satisfy a reasonable settlement or other agreement with plaintiff.

Obviously, the correct sequence of events delineated by § 621 is for the Court – once the nonmanufacturing defendant has made the proper certifications – to dismiss the seller. The statute is crystal clear on this point, using the verb "shall" (*i.e.*, the court *shall* order the dismissal of the certifying defendant). Subsequent to the dismissal, if the plaintiff makes the necessary showing, the plaintiff then can move to vacate the dismissal order and "reinstate the certifying defendant."

Here, Plaintiffs wish to shortcut the process and block dismissal of the strict liability claim against QVC, on the ground that manufacturer Waveware may not be able to satisfy a judgment obtained herein. Plaintiffs offer a "letter to the editor" of a newspaper, in which Waveware's owner (James Connolly) noted that his company was "very small," that it lacked "the resources to defend this action," and that is had no insurance coverage for this claim (*see* Doc. 67, pp. 4-5). Even if the Court found such material insightful, it ought not be considered here. That is because on a Rule 12(b)(6) <u>dismissal</u> motion, the Court should not consider material "outside" the pleadings, such as the statements tendered by Plaintiffs' counsel to oppose dismissal of the strict liability claim against QVC. *See, e.g.,* FED. RULES CIV. P. 12(b)(6) and 12(c); *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 480 (7th Cir. 2002).

Thus, the Court will grant in part (as to Count XII) and deny in part (as to Counts XI, XIII, XIV and XV) QVC's motion to dismiss (Doc. 52). Attention now turns to the pending summary judgment motion, analysis of which is aided by a brief factual overview.

D.     Analysis of Summary Judgment Motion (Doc. 54)

Defendants Waveware Limited and QVC maintain that summary judgment is properly entered in their favor on all counts of the amended complaint, because no genuine issues of material fact exist, Carol Deichmann cannot recover under any of her theories as a matter of law, and Terry Deichmann's claims are derivative of his wife's and fail to survive summary judgment. The parties do not dispute the following relevant facts.

In October 2003, Carol Deichmann purchased a pair of Cozy Toze Microwave Heated Slippers from QVC. The slippers are designed with a black rubber insole that can be removed through a zippered opening, heated in a microwave oven, and replaced in the slippers. The heated insoles warm the user's feet.

Carol first used the slippers in late December 2003. On the day in question, Carol heated up the slipper insoles in her microwave oven (an 1100-watt microwave oven) for 45 seconds. Using potholders, Carol removed the insoles from the microwave oven and placed the insoles inside the slippers. She then tested the heat of the slippers by pressing her hand against the base of the insole. She did not think they were too hot, so she carried the slippers to her family room, sat down on her couch, and put on the slippers. Approximately ten minutes later, Carol heard her dryer buzzer and, without thinking, jumped up and ran downstairs to remove her clothes from the dryer.[3]

---

[3]     Carol had not planned to walk on the slippers, because she knew that might put her at risk for injury (Doc. 68, ¶ 11).

Upon returning upstairs, Carol noticed that her feet were wet. She realized she had burned and blistered her feet, and that the wetness was from popped "water blisters."

Carol received an instruction sheet with her slippers. The parties disagree over *which* sheet Carol actually received with her pair of slippers. Carol denies that Exhibit B to Defendants' "statement of uncontroverted material facts" (Exh. 52-7)(which was also presented to Carol during her deposition) is the instruction sheet she received with her slippers. However, Carol does admit that the sheet she received:

- had two headings entitled "How to Use Your Cozy Toze" and "Safety & Care Instruction";
- included the statement: "This information is very important for your own safety. You MUST also read your safety instructions before use.";
- included the statement: "Do not put the heated slippers onto anyone who is infirm or suffering from decreased sensitivity."; and
- included the statement: "It is advisable that you sit for the first few minutes after heating the slippers. The pressure caused by walking may cause excessive heat to be released from the slipper."

Carol did not read the "Safety & Care Instructions" on the sheet she received with the slippers.

At the time she suffered the burns to her feet, Carol Deichmann was a diabetic with pre-existing neuropathy in her feet. In the two or three years prior to this occurrence, Carol had undergone amputations of toes on both her left and right foot. Her primary care physician, Dr. Peter B. Malench of Maryville, Illinois, has treated Carol for over ten years. Carol alleges that, as a result of the burns described herein, she

sustained severe and disabling injuries, suffered great physical pain and mental anguish, suffered an impairment in her ability to earn a livelihood, was compelled to expend large sums of money for health care services and has been permanently disabled.

In addition to her husband's loss of consortium claims, Carol's amended complaint contains claims for negligence, breach of implied warranty, breach of express warranty and strict liability. The strict liability claims allege both improper design of the product and failure to adequately warn users how to safely use the product (*see* Doc. 17, p. 14, p. 22).

Seeking summary judgment, Defendants argue: (1) Plaintiffs cannot establish a prima facie case of strict liability; (2) the record fails to establish that the slippers had a design or manufacturing defect *or* that such defect caused Carol Deichmann's injury; (3) Plaintiffs cannot establish a prima facie case of negligence or breach of warranty; and (4) the loss of consortium claim must fail, since Defendants cannot be held liable for the primary injuries.

This Court applies the substantive law of the forum state (Illinois) in this diversity jurisdiction-based case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Lummis v. Sate Farm Fire & Cas. Co.*, 469 F.3d 1098, 1100 (7th Cir. 2006); *Wolverine Mut. Ins. v. Vance*, 325 F.3d 939, 942 (7th Cir. 2003).

Under Illinois law, to recover in a strict product liability action, plaintiff must prove that her injury resulted from a condition in the product, that the condition was unreasonably dangerous, and that the condition existed at the time the product left

the manufacturer's control. *Kelso v. Bayer Corp.*, 398 F.3d 640, 642 (7th Cir. 2005); *quoting Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002). A product may be unreasonably dangerous because of a design defect, a manufacturing defect, "or a failure of a manufacturer to warn of a danger or instruct on the proper use of the product as to which the average consumer would not be aware." *Id.*

In the case *sub judice*, Defendants contend that they cannot be held liable on a failure-to-warn theory (whether based on strict liability or based on negligence), because (a) manufacturers are entitled to assume that their warnings will be heeded, and (b) following the warnings provided here would have prevented the harm sustained by Carol Deichmann. But genuine issues of material fact exist as to whether Carol (who was cognizant of her decreased sensitivity in both feet) was *fully* aware of the dangers posed by the slippers, and whether following the precise warnings on the package insert she received would have prevented the injury Carol sustained. (Indeed, despite the volley of "Undisputed Material Facts" exchanged by the parties, factual issues remain as to which instruction sheet Carol received and which warnings she actually read.) The genuine issues of material fact preclude the entry of summary judgment on the failure to warn claims.

Similarly, the Court finds unavailing Defendants' argument for summary judgment on the design/manufacturing defect claims. The record raises genuine issues of material fact as to whether or not such a defect flawed the Cozy Toze slippers.

Under Illinois law, a manufacturer bears a nondelegable duty to produce a

product that is reasonably safe for its intended uses. *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 43 (Ill. 2002). A plaintiff may demonstrate defective design in a product, thereby subjecting a retailer and manufacturer to strict liability for resulting injuries, in two ways:

> "(1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs."

*Hansen*, 764 N.E.2d at 43, *quoting Lamkin v. Towner*, 563 N.E.2d 449 (Ill. 1990). The first approach is commonly referred to as the "consumer expectation" test. The second method is called the "risk-utility" test. *Id.*

Defendants insist that when a product is simple and straightforward, "only the consumer contemplation test applies" (Doc. 55, p. 9). Generally, this is true. For instance, in *Mikolajczyk v. Ford Motor Co.*, 859 N.E.2d 201, 213-14 (Ill. App. 2006), the Court of Appeals remarked: "in cases in which the nature of the danger is obvious and the nature of the mechanism involved is simple, a plaintiff may not demonstrate that a design is defective under the risk-utility test."

Just last month, however, the Illinois Supreme Court declined to adopt a *per se* rule that cases involving "simple" products with "open and obvious" dangers would be exempt from the risk-utility test and subject only to the consumer expectation test. *Calles v. Scripto-Tokai Corp.*, – N.E.2d –, 2007 WL 495315 (Ill. Feb. 16, 2007).

Put simply, a product is unreasonably dangerous when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Mikolajczyk,* 859 N.E.2d at 213, *quoting Lamkin*, 563 N.E.2d at 457, and *Palmer v. Avco Distributing Corp.*, 512 N.E.2d 959, 962 (Ill. 1980).

Surely, ordinary consumers would expect Cozy Toze slippers to "provide heat to warm their feet" (Doc. 55, p. 9). That does not end the inquiry or bar the design defect claim here, though. Questions linger as to whether an ordinary person would anticipate the *amount of heat* produced by the slippers when used in an intended or reasonably foreseeable manner (*i.e.*, heated for 45 seconds in a microwave oven).[4]

Defendants stress that Carol Deichmann knew she had pre-existing conditions that exposed her to increased risk of injury from heat (Doc. 55, p. 10). But under the consumer expectation test, the proper focus is *not* what Carol Deichmann knew or expected. Rather, the question is what an ordinary consumer/purchaser would expect about the product and its safety. It is an *objective* standard, "based on the average, normal, or ordinary expectations of the reasonable person" and is "not dependent on the subjective expectation of a particular consumer or user." *Calles*, 2007 WL 495315 at *3.

---

[4] Fact questions also surround whether the particular packaging received by Carol Deichmann specified that the microwave oven could be no more than 850 watts and whether she followed those instructions or "misused" the slippers.

Viewing all facts and reasonable inferences in the light most favorable to Plaintiffs, the Court must reject Defendants' argument: "Plaintiffs cannot show that the … slippers are unreasonably dangerous under the consumer expectation test" (Doc. 55, p. 10). Moreover, the Illinois Supreme Court has recognized that, in many situations, "the expectations of the ordinary consumer cannot be viewed as the exclusive yardstick for evaluating design defectiveness." *Calles*, 2007 WL 495315 at * 4. Thus, even if a product satisfies ordinary consumer expectations, it might be defectively designed if the design "embodies excessive preventable danger," or "the risk of danger inherent in the challenged design outweighs the benefits of such design." *Id*. *See also Hansen*, 764 N.E.2d at 436 (Under risk-utility test, a plaintiff "may demonstrate that a product is unreasonably dangerous because of a design defect by presenting evidence of an alternative design that would have prevented the injury and was feasible in terms of cost, practicality and technological possibility."). Summary judgment is not merited as to the design or manufacturing defect claims.

Nor is it merited on the negligence claims. Defendants' argument on this front is that four of the five negligence allegations are identical to Plaintiffs' strict liability allegations, and if the strict liability claims fail as a matter of law, then so do the negligence claims. The Court already has found that the strict liability claims survive summary judgment, though. Additionally, Defendants failed to develop their argument that summary judgment is proper because "several" of Plaintiffs' theories of liability "are not supported by plaintiffs' expert" (Doc. 55, p. 13).

Which leaves Plaintiffs' breach of warranty and loss of consortium claims. Although it is a closer call, the Court declines to enter summary judgment in favor of Defendants on the breach of warranty claims. Viewing all facts and reasonable inferences in the light most favorable to Plaintiffs, the Court concludes that Defendants impliedly and/or expressly warranted that the slippers were safe for use as foot warmers, and Carol Deichmann relied upon the QVC advertisement when she purchased the slippers. The derivative loss of consortium claim survives because the claims upon which it depends have survived.

E.  Conclusion

For all these reasons, the Court **GRANTS in part** (as to Count XII) and **DENIES in part** (as to all other counts) QVC's January 19, 2007 dismissal motion (Doc. 52), and **DENIES in its entirety** QVC and Waveware Limited's January 19, 2007 summary judgment motion (Doc. 54). The Honorable Clifford J. Proud will conduct a settlement conference on March 29, 2007, and the undersigned Judge has a *Daubert* hearing scheduled for April 20, 2007, with jury trial commencing on May 7, 2007.

IT IS SO ORDERED.

DATED this 20th day of March 2007.

s/ Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge