IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAROL J. DEICHMANN, and<br>TERRY L. DEICHMANN,<br><br>    Plaintiffs,<br><br>vs.<br><br>WAVEWARE LIMITED, and<br>QVC, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 05-cv-0831-MJR<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM and ORDER

REAGAN, District Judge:

  Before the Court is a motion to bar expert witness, which was filed by Defendants and fully briefed as of March 9, 2007. After conducting an evidentiary hearing on April 20, 2007, the undersigned District Judge took the motion under advisement. Having carefully considered the briefs, the evidence, and counsel's oral arguments, the Court DENIES the motion (Doc. 61) for the reasons stated below.

  This personal injury lawsuit arose from Carol Deichmann's use of "Cozy Toze" microwave-heatable slippers. The slippers were manufactured by Waveware Limited and sold by QVC, Inc. When wearing the slippers in December 2003, Carol blistered and burned her feet. She asserts claims based on negligence, breach of implied warranty, breach of express warranty, loss of consortium (on behalf of her husband, Terry Deichmann) and strict products liability.

The strict liability claims against Waveware[1] are grounded on theories of design defect and failure to adequately warn consumers as to the safe and proper method of using the product. To support these claims, Carol and Terry Deichmann intend to call Mark Passamaneck, a mechanical engineer.

By motion filed January 22, 2007 (Doc. 61), QVC and Waveware, Ltd ("Defendants") seek to bar Passamaneck from testifying at trial. The parties' briefs thoroughly delineate the arguments for and against the motion, and the Court need not restate those arguments here. Plaintiffs, who disclosed Passamaneck on November 17, 2006, arguably were tardy in providing Passamaneck's report on January 12, 2007, but that delay (now water under the bridge) does not form the basis of the motion to bar. Instead the question is whether Passamaneck passes muster under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In his curriculum vitae, part of Exhibit A presented by Plaintiffs at the April 20th hearing, Passamaneck describes his expertise as follows:

> Mr. Passamaneck, a mechanical engineer, has eleven years experience in the forensic field. He investigates failed commercial and residential HVAC and plumbing products and systems. He has extensive automotive experience evaluating failures and accidents involving consumer, commercial, off-road and race vehicles.[2]

---

[1] This Court dismissed the strict liability claim against QVC on March 20, 2007. *See* Doc. 79.

[2] The CV also was provided in connection with an earlier-filed motion herein. *See* Doc. 42-3 at pp. 5, *et seq.*

2

In his report prepared for this case (Doc. 42-7 at p. 5), Passamaneck concluded as to the Cozy Toze:

> the product presents an unidentified risk of injury to users.... the manufacturer created this condition by the materials used to produce the product as well as failing to warn of the proper use and potential hazard of misuse of the product.

The admissibility of expert testimony is governed by Rule 702 and *Daubert*. *See, e.g., Ancho v. Pentek Corp.*, 157 F.3d 512, 515 (7th Cir. 1998); *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir.1995).

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion ... if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert* requires District Courts to perform a gate-keeping function as to evidence offered by expert witnesses, to "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). A District Court should consider certain criteria in deciding whether testimony satisfies *Daubert*, including these five nonexclusive guideposts: (1) whether the proffered testimony (or the theoretical framework or technique underlying it) is subject to verification through testing, (2) whether the testimony/technique has been subjected to peer review and

3

publication, (3) what its known or potential rate of error is, (4) whether there are standards controlling its application, and (5) whether it is generally accepted within the relevant expert community. *Mihailovich v. Laatsch*, 359 F.3d 892, 918-19 (7th Cir.), *cert. denied*, 543 U.S. 926 (2004); *Deimer*, 58 F.3d at 344.

These five factors should be flexibly applied, depending on the type of expert testimony at issue. *Mihailovich,* 359 F.3d at 919.  The objective of *Daubert* is that District Courts make certain that "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

In the case at bar, evidence adduced at the April 20th hearing established the following.

Passameneck is Licensed Professional Engineer in three states and is registered with the National Council of Examiners for Engineering and Surveying, an umbrella organization comprised of engineering licensing boards throughout the United States.

He graduated from college with a Bachelor of Science in mechanical engineering.  His undergraduate course work included a course in heat transfer.  He performed his graduate work at the University of Colorado-Denver, where his studies included two courses in heat transfer and two courses in thermodynamics, as well as a graduate-level course in forensic engineering/investigations. His early experience

4

included work as a lab technician and a machine shop operator.

In 1995, Passamaneck was hired by Analytical Engineering, Inc., where he worked as an Engineering Technician.  In 1997, he began work for Western Engineering & Research Corporation, where he served as a Project Engineer from 2000 to 2005. Since 2006, Passamaneck has worked as an Associate Principal Engineer at Western Engineering.  His work at Western Engineering has included multiple scald cases. He has presented material on proper water temperatures, and he testified in or on 26 different matters/cases (see "Testimony Record" attached to Doc. 42-3).  He has had some (though admittedly limited) experience with tissue damage resulting from direct contact with a heated surface, as opposed to a scald injury.

As to the litigation at hand, Passamaneck reviewed deposition testimony – including  the depositions of Carol Deichmann (Plaintiff) and James Connolly (owner/manager of Waveware, Ltd which is located in Longford, Ireland).[3] Passamaneck also reviewed the packaging from the Cozy Toze, the "subject slippers" and the "subject microwave" (an 1100-watt Kenmore model 721.69259990 manufactured in September 1999).

He performed two series of tests.  The first series of tests was conducted on the removable silicone insoles.  The purpose of these tests was to determine the actual temperature of a slipper insole after it was heated for 45 seconds and after it was

---

[3]   *See* Doc. 56-8, p. 6.

heated for 30 seconds.  The second series of tests measured the thermodynamic response that the bottom of a person's foot would be subjected to – *i.e.*, the temperature at two locations where the foot would actually come in contact with the foot-bed of the slipper.

These tests indicated (*inter alia*) that after 45 seconds the temperature inside the slipper was higher than 170 degrees Fahrenheit.  Passamaneck opined that, at this temperature, the human skin is subject to second degree burns "even with short duration contact of less than one minute" (1/12/07 Report at p. 11).  In reaching this opinion, Passamaneck relied on "fundamental literature in the field" published in 1946 from Dr. Moritz of Harvard Medical School who conducted tissue burn experiments using porcine subjects.[4]

Passamaneck is qualified as an expert by knowledge, skill, experience, training, and education.  He followed industry standards in performing the tests in this matter. The techniques he used have been subjected to peer review.  Although it would be preferable if his report included more detailed information as to his methodology, Passamaneck's <u>testimony</u> filled in gaps.  He established that his testing methods could be easily reproduced, and he evaluated his test results "in light of the potential rate of error of the scientific technique." *Deimer*, **58 F.3d at 344**.  Specifically, Passamaneck testified to an acceptable rate of error, a few degrees (less than five) on either side of his temperature results.

---

[4] Apparently, pig skin was used in the experiments because of its similarity to human skin tissue.

6

Passamaneck conducted "studies or analysis to substantiate his opinion," *id.,* and he was qualified to conduct the mechanical engineering evaluation/tests involving the slippers in question in this case.

Although he has never developed a warning, Passamaneck has experience in mechanical engineering forensic analysis in matters in which warnings, labels and product design were at issue. Additionally, he has investigated hundreds of cases involving warnings and has a thorough understanding of applicable standards. *See* Doc. 66, p. 2. Over half of his forensic engineering work involved failure analysis of consumer products. *Id.*

Here, scientific knowledge will assist the trier of fact – the jury – to understand the evidence and to determine the facts. The Court finds that Passamaneck's testimony is based upon sufficient facts and data, that his testimony is based on reliable principles and methods, and that he has applied the principles and methods to the facts of *this* case in a reliable manner.

Stated another way, Passamaneck's opinions have been tested via the scientific method and are not merely the product of "subjective belief or unsupported speculation." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). Passamaneck's opinions have a sufficient nexus with the facts of this case and with the relevant issues to assist the jurors in understanding the evidence and performing their role as fact finders.

For instance, facts regarding the temperature (and duration of exposure)

at which human tissue will suffer second degree burns lie beyond the realm of acquired knowledge typically possessed by the average lay juror. And the scientific testimony Passamaneck offers "fits" the issue at hand.  *See, e.g., O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994).

Without a doubt, legitimate questions exist as to Passamaneck's tests and report.  Those questions, however, are the proper subject of cross-examination. Passamaneck is sufficiently qualified and has relevant opinions to offer in the case sub judice.  His opinions survive scrutiny under Rule 702 and *Daubert*.  Defense counsel's questions (many of which were touched upon at the April 20th hearing) challenge the *weight* to be given Passamaneck's testimony rather than blocking its admission.

For all these reasons, the Court **DENIES** Defendants' motion to bar expert testimony (Doc. 61).

Jury trial will proceed at 9:00 am on Monday, May 7, 2007.  The undersigned Judge will conduct a final pretrial conference at 10:30 am on Friday, April 27, 2007. Counsel are reminded that the final pretrial conference will be held in Magistrate Judge Wilkerson's courtroom, as the undersigned District Judge's courtroom will be used for a naturalization ceremony that morning.

Remaining for disposition is Defendants' March 30, 2007 motion (Doc. 81) seeking to prohibit argument and evidence regarding certain instructions/warnings. Plaintiffs have filed a written response to the motion (*see* Doc. 86), and counsel should be prepared to address this motion at the final pretrial conference.

Finally, counsel are urged to contact Magistrate Judge Clifford J. Proud at 618-482-9006 to reschedule a settlement conference, if they believe such conference might be productive now that the major motions have been decided.

IT IS SO ORDERED.

DATED this 24th day of April 2007.

s/ Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge